*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* S. GOODLOE, Minor.

UNPUBLISHED
April 22, 2026
8:55 AM

No. 377205
Jackson Circuit Court
Family Division
LC No. 15-000543-NA

Before: TREBILCOCK, P.J., and BOONSTRA and LETICA, JJ.

PER CURIAM.

Respondent-mother appeals the trial court's order terminating her parental rights to her minor child, SG. The core issue on appeal is whether the trial court's order complies with federal and state statutes governing child welfare proceedings involving those with Native American heritage. See Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq*.; Michigan Indian Family Preservation Act (MIFPA), MCL 712B.1 *et seq*. She also asserts a due-process violation predicated upon the Department of Health and Human Services creating the conditions that led to the termination of her parental rights. Finally, respondent challenges the trial court's findings that statutory grounds for termination existed under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist) and (3)(j) (child will be harmed if returned to parent), that the Department made reasonable efforts toward reunification, and that termination was in SG's best interests. Although we cannot agree with these latter issues raised by respondent, we hold the trial court's order did not conform with the ICWA and the MIFPA and thus conditionally reverse for compliance with the relevant notice provisions set forth in those statutes.

## I. FACTS

This matter arises out of the protective custody of SG after respondent left him with unknown people who were not willing to care for him. Respondent struggled with substance-abuse and housing challenges. After adjudication in May 2024, the trial court ordered respondent to maintain housing; complete a psychological examination and follow any recommendations; complete a substance-abuse assessment and follow any recommendations; and participate in drug screenings, parenting classes, and individual therapy. In October 2024, SG's biological father became a respondent in the case. During his adjudication, SG's father alerted the trial court that

SG's grandmother was a recognized member of the Cherokee tribe. The trial court, however, did not further address SG's potential Native American heritage.

Respondent completed her substance-abuse evaluation in November 2024 and attended about half of her scheduled therapy sessions. She completed her psychological evaluation in March 2025. Respondent began attending drug screenings in January 2025 but again attended about half; she also tested positive for substances at the screenings that she attended. Respondent testified that therapy made her more anxious and depressed and that her therapist was not trying to help her. She asked if she could find another therapist and was told that she could but was recommended to see how her current treatment progressed. The trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist) and (3)(j) (child will be harmed if returned to parent).[1] Respondent now appeals by right.

## II. ICWA AND MIFPA

Respondent first asserts that the trial court violated the ICWA and MIFPA because it never confirmed whether SG had Cherokee heritage. Petitioner concedes that the trial court failed to make a record of compliance with the notice provisions of the ICWA and MIFPA. We agree as well and conditionally reverse the trial court's order terminating respondent's parental rights.

"The ICWA and the MIFPA each establish various substantive and procedural protections for when an Indian child is involved in a child protective proceeding." *In re England*, 314 Mich App 245, 251; 887 NW2d 10 (2016). When there is sufficient evidence that a child may have Native American heritage, the trial court must comply with the tribal-notice provisions of ICWA and MIFPA. See *In re Morris*, 491 Mich, 81, 100; 815 NW2d 62 (2012). A biological parent's assertion that the minor child may have Native American heritage—like the notice given by SG's biological father here—is enough to trigger the notice requirements of both ICWA and MIFPA. See MCL 712B.9(4)(a); *In re Jones*, 316 Mich App 110, 117; 894 NW2d 54 (2016).

Once the tribal-notice provision is triggered, the Department must notify the child's tribe of the pending proceedings and the right of intervention by registered mail and request a return receipt. 25 USC 1912(a); MCL 712B.9(1). If it cannot determine to which tribe the child may be a member, then MIFPA requires the Department to contact in writing any tribe located within the county where the child is located. MCL 712B.9(3). The trial court may not conduct additional termination proceedings until at least 10 days after the tribe receives notice of the proceedings. 25 USC 1912(a); MCL 712B.9(2). The trial court is required to document this notice by ensuring that the record includes "(1) the original or a copy of each actual notice personally served or sent via registered mail pursuant to 25 USC 1912(a), and (2) the original or a legible copy of the return receipt or other proof of service showing delivery of the notice." *In re Morris*, 491 Mich at 114. The MIFPA similarly dictates that the Department "shall document all efforts made to determine a child's membership or eligibility for membership in an Indian tribe and shall provide them, upon

---

[1] The trial court also terminated the parental rights of SG's biological father, who is not a party to this appeal.

request, to the court, Indian tribe, Indian child, Indian child's lawyer-guardian ad litem, parent, or Indian custodian." MCL 712B.9(7).

Nothing in the record indicates that the Department notified the Cherokee tribe of the proceedings and of the right of intervention as required by the ICWA and the MIFPA. See 25 USC 1912(a); MCL 712B.9(1). The Department similarly failed to contact any tribes located in Jackson County through writing. See MCL 712B.9(3). The Department concedes that, even if such notice occurred, the trial court erred by failing to properly document the notice in the record. See *In re Morris*, 491 Mich at 113. Without such documented notice, the trial court was required to suspend the termination proceedings until the Department provided proper notice to the Cherokee tribe. See 25 USC 1912(a); MCL 712B.9(2). The trial court, therefore, erred by terminating respondent's parental rights. See 25 USC 1912(a); MCL 712B.9(2).

As set forth below however, we find the remaining issues raised on appeal by respondent to be without merit. If those were the only issues presented, we would otherwise affirm the trial court's order terminating respondent's parental rights. But given the trial court did not comport with the notice provisions in the ICWA and the MIFPA, we must conditionally reverse the trial court's order. See *In re Morris*, 491 Mich at 121; *In re Jones*, 316 Mich App at 118. Upon remand, if the trial court determines that the ICWA and MIFPA apply, "then the foster care or termination proceedings are invalidated and the proceedings begin anew under ICWA's standards." *In re Morris*, 491 Mich at 120.

### III. STATUTORY GROUNDS

We turn next to whether statutory grounds for termination existed under MCL 712A.19b(3)(c)(*i*) and (j). "In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met," a decision this Court reviews for clear error. *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). Although the trial court found support for termination in two grounds, only one is necessary to affirm the termination of a respondent's parental rights. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009). We discern no clear error in the trial court's application of MCL 712A.19b(3)(c)(*i*) mandating reversal (and thus do not address its separate conclusion under Subsection (3)(j)).

Under MCL 712A.19b(3)(c)(*i*), statutory grounds for termination exist when "the totality of the evidence amply supports that [the respondent] had not accomplished any meaningful change in the conditions" that led to the adjudication, *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009), and that the respondent would not be able to rectify those conditions "within a reasonable time considering the child's age," MCL 712A.19b(3)(c)(*i*). The parties do not dispute that more than 182 days had passed since adjudication and disposition in accordance with Subsection (3)(c). See MCL 712A.19b(3)(c).

Respondent's substance abuse and mental-health challenges that caused her to be unable to care for the child led to respondent's adjudication. To rectify these conditions, the trial court required respondent to maintain housing, complete a substance-abuse assessment and follow the recommendations, participate in drug screenings, participate in parenting classes, complete a psychological evaluation and follow the recommendations, and participate in individual therapy.

Though respondent completed some aspects of her case service plan by completing her psychological evaluation, attending parenting classes, attending some drug screenings, completing her substance-abuse evaluation, and attending some individual therapy, respondent demonstrated insufficient compliance with her case service plan overall. See *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

Respondent demonstrated minimal benefit from her parenting classes; delayed participating in her psychological evaluation, substance-abuse evaluation, and drug screenings; attended approximately half of her drug screenings after her participation began; tested positive for substances at all drug screenings that she attended; attended approximately half of her therapy appointments; was discharged unsuccessfully from therapy; and failed to acquire adequate housing. Respondent's "insufficient compliance with and benefit from the services provided by the [Department]" justify the termination of her parental rights under Subsection (3)(c)(*i*). See *id*.

Further, the psychologist who completed respondent's psychological evaluation recommended that respondent complete substance-abuse treatment followed by nine- to twelve-months of successful sobriety. At the time of the termination hearing, respondent had not yet successfully completed substance-abuse treatment and individual therapy. Respondent previously indicated that she was unwilling to participate in inpatient treatment. Therefore, to address her substance-abuse issues, respondent would need an undetermined amount of time to fully complete treatment in addition to nearly a year of sobriety. Given that SG was five years old at the time of the termination hearing, this additional year of foster care is "too long a period to await the mere possibility of a radical change in [respondent's] life." *In re Williams*, 286 Mich App at 273. Respondent's "minimal progress" in addressing the remaining requirements of the service plan further supports that respondent will not be able to rectify the conditions that led to adjudication in a "reasonable time." *In re Smith*, 324 Mich App 28, 49; 919 NW2d 427 (2018).

We are not persuaded by respondent's contention that the trial court terminated respondent's parental rights because of her income. Instead, the trial court found that respondent was unable to care for SG in her current mental state and that it was unlikely that she could rectify her mental-health and substance-abuse challenges within a reasonable period. The Department provided respondent with multiple referrals for her substance-abuse evaluation that led to therapy. Respondent testified that, when she felt like her current therapist was not helping her, she was given the choice between trying to see if her current therapy improved or finding her own therapist. Respondent remained with her then-therapist until the provider terminated the service. At no point did respondent express concern about being unable to attend therapy through either the Department-provided therapist or a therapist of her choosing because of financial limitations. Respondent testified that she was in the process of arranging her own therapy at the time of the termination hearing and would be more willing to engage in a therapy service that she arranged. Therefore, the record does not support that the trial court terminated respondent's parental rights on the basis of her income.

## IV. DUE PROCESS

Respondent next asserts that the trial court violated her due-process rights because the Department created the conditions that led to the termination of her parental rights. On de novo review, *In re Rood*, 483 Mich, 73, 91; 763 NW2d 587 (2009), we disagree.

-4-

"Natural parents have a fundamental liberty interest in the care, custody, and management of their children, and the state must therefore meet a high burden before terminating an individual's parental rights." *In re B and J*, 279 Mich App 12, 18; 756 NW2d 234 (2008). "The government may not infringe a fundamental liberty interest unless the infringement is narrowly tailored to serve a compelling state interest." *Id*. at 22. "[W]hen the state deliberately takes action with the purpose of 'virtually assur[ing] the creation of a ground for termination of parental rights,' and then proceeds to seek termination on that very ground, the state violates the due-process rights of the parent." *Id*. at 19-20 (citation omitted; second alteration in original).

Respondent claims the Department's failure to provide a new therapist created the circumstances that led to the termination of her parental rights. In support, she notes that attending therapy made her more depressed and anxious and that she felt that her therapist was not trying to help her. She asked if she could find another therapist and was told that she could but was advised to see how treatment progressed. It is unclear from respondent's testimony if respondent discussed her desire for a new therapist with her caseworker or then-therapist. We assume that the Department was aware of her concerns.

These facts do not establish a due-process violation. The Department provided respondent with the opportunity to engage in the services necessary to avoid termination. It is unclear from respondent's testimony when she first alerted the Department that she was having issues with her therapist. However, respondent was recommended, presumably by her therapist or caseworker, to continue with her current therapy to see how things improved over time, and she was otherwise free to independently find a new therapist. Though respondent continued therapy with her then-provider as recommended, she failed to fully engage in the treatment and attended fewer than half of her scheduled sessions. Respondent's delayed participation and lack of engagement in services overall demonstrated that respondent created the circumstances that led to termination, not the Department. It cannot be said that if the Department had immediately referred respondent to a new therapist, "there would have arisen no cause for termination of parental rights." *Id*. at 23. The trial court, therefore, did not violate respondent's due-process rights by terminating her parental rights.

## V. REASONABLE EFFORTS

Respondent asserts that the Department failed to make reasonable efforts toward reunification because the Department failed to arrange alternative therapy. Again, we disagree.

We begin by briefly noting respondent preserved this issue for appeal by raising at her termination hearing that she felt that the Department-provided therapist was not trying to help her and asked if she could find another therapist despite not doing so when the Department adopted the case service plan. See *In re Atchley*, 341 Mich App 332, 337; 990 NW2d 685 (2022). When preserved, as here, we review a trial court's factual findings regarding reasonable efforts for clear error. *Id*.

Before seeking to terminate a parent's rights, the Department generally must make reasonable efforts to reunify a family. *In re Hicks/Brown*, 500 Mich 79, 85, 85 n 4; 893 NW2d 637 (2017). As part of that duty, "the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve

reunification." *Id*. at 85-86. But there equally "exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. "Not only must [the] respondent cooperate and participate in the services, she [or he] must benefit from them." *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014). Therefore, when "services were proffered, but [the] respondents failed to either participate or demonstrate that they sufficiently benefited from the services provided," the Department discharges its duty to make reasonable efforts, though its efforts were unsuccessful. *In re Frey*, 297 Mich App at 248. Further, "[w]hen challenging the services offered, a respondent must establish that he or she would have fared better if other services had been offered." *In re Sanborn*, 337 Mich App 252, 264; 976 NW2d 44 (2021).

The trial court ordered respondent to complete a psychological evaluation and follow any recommendations, complete a substance-abuse evaluation and follow any recommendations, and participate in individual therapy. The Department, in turn, provided respondent with referrals to complete a psychological evaluation and substance-abuse evaluation in July 2024. Respondent completed her substance-abuse evaluation in November 2024, and the provider offered individual therapy. Because the Department proffered the required services, respondent was required to participate in and benefit from the services offered. See *In re TK*, 306 Mich App at 711; *In re Frey*, 297 Mich App at 248. Respondent began attending the offered therapy but felt that her then-therapist was not trying to help her and asked about finding a new provider. Respondent was given the option of finding a new provider or seeing if her current therapy improved. Respondent remained with her current provider until the service was terminated in July 2025. However, once respondent engaged in therapy, she attended fewer than half of her scheduled therapy sessions. During this time, she also attended only about half of her required drug screenings and tested positive for substances at every screen that she attended. Respondent indicated that she would not be willing to attend inpatient treatment.

Respondent's lack of engagement with therapy and other services provided by the Department to address her mental-health and substance-abuse issues suggests that she would not "have fared better if other services had been offered." *In re Sanborn*, 337 Mich App at 264. Therefore, because the Department offered services to address respondent's mental-health and substance-abuse challenges, though respondent failed to engage in those services, the Department discharged its duty to make reasonable efforts toward reunification. See *In re Frey*, 297 Mich App at 248.

Given respondent's failure to engage with the services offered, we are not "left with a definite and firm conviction" that the trial court made a mistake when it found that the Department made reasonable efforts toward reunification. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010) (quotation marks and citation omitted). Therefore, the trial court did not clearly err by finding that the Department made reasonable efforts to facilitate reunification. See *In re Atchley*, 341 Mich App at 338.

## VI. BEST INTERESTS

Finally, respondent asserts that the trial court erred by finding that termination was in SG's best interests. The petitioner must show that termination is in the child's best interests by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We

-6-

review a trial court's best-interest determination and its factual findings supporting that determination for clear error. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). Viewing respondent's arguments through that discerning review standard, we find no reversible error on this issue.

In assessing whether termination is in a child's best interests, the focus is on the child, not the parent. *In re Mota*, 334 Mich App 300, 321; 964 NW2d 881 (2020). "The trial court should weigh all the evidence available to determine the child's best interests." *In re White*, 303 Mich App, 701, 713, 846 NW2d 61 (2014). A trial court may consider "the child's bond to the parent[;] the parent's parenting ability[;], the child's need for permanency, stability, and finality[;] and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. Other considerations include unresolved mental and emotional issues demonstrated by a psychological evaluation. See *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009). Any given consideration is "only one factor among many" in a trial court's best-interest determination, and the trial court is permitted to "[give] strong weight to the children's need for safety and stability." *In re White*, 303 Mich App at 714.

In its best-interest ruling, the trial court properly considered SG's bond with his foster parents. See *id.*; *In re Olive/Metts Minors*, 297 Mich App at 42. SG's foster parents were prepared to adopt SG, and SG stated that he wanted to stay with them. The trial court also properly considered SG's need for permanency, stability, and finality and the advantages that SG's foster home provided regarding this need. See *In re Olive/Metts Minors*, 297 Mich App at 42. The Department caseworker testified that SG positively benefited from the consistency of foster care. SG attended therapy and his foster parents provided additional outlets to work with SG on his behavioral issues. SG improved his communication and engagement with others and showed decreased anxiety. Finally, the trial court properly considered respondent's parenting ability in light of her mental-health and substance-abuse challenges. See *id.*; *In re Jones*, 286 Mich App at 129. The psychologist testified that there would be a risk of harm to SG if returned to respondent because of her unaddressed mental-health and substance-abuse challenge. Respondent was discharged from individual therapy because of the amount of time spent without successful completion, previously indicated that she would not participate in inpatient treatment, demonstrated minimal improvement from her parenting class, and was discharged from supportive visitations because she surpassed the allowable number of unscheduled missed visits.

Respondent argues that the trial court failed to consider the bond between respondent and SG, respondent's successful parenting during parenting time, the progress respondent made toward complying with her case service plan, and whether allowing respondent additional time to comply with her service plan would resolve respondent's issues. Though "[t]he trial court should weigh all the evidence available to determine the child's best interests," which best-interest factors are considered, and the relative weight of those factors is within the trial court's discretion. *In re White*, 303 Mich App, at 713-714. The trial court was permitted to give strong weight to the foster home's ability to give SG permanency, stability, and finality in comparison to respondent. See *id.* at 714.

## VII. CONCLUSION

For these reasons, we conditionally reverse the trial court's order terminating respondent's parental rights and remand to the trial court for compliance with ICWA and MIFPA. We do not retain jurisdiction.

/s/ Christopher M. Trebilcock
/s/ Mark T. Boonstra
/s/ Anica Letica